The Chancellor.
In this case, the material facts charged in the bill are that Benjamin Wright, late of Hunterdon county, died on or about February ninth, eighteen hundred and twenty-six, leaving fourteen children, to wit, Mary wife of James Cooley, Sarah, Margaret, Benjamin, Nathaniel, Hannah wife of John Mettler, Ann wife of Nathan Dawes, David, Francis Q., Elijah, Rachel wife of William R. Seigle, Catharine wife of David Conover, John A. and Reuben, and also leaving a widow ; that said Benjamin Wright had considerable real and personal estate, and by his last will and testament, among other things, he did devise as follows: “ It is my will that when my youngest child living is twenty-one years of age, all of my real estate shall either be sold or divided, whichsoever a majority of my children then living shall think best, and with regard to the distribution in either case,my sons shall take two shares and my daughters one share.” “Sixth and lastly, I constitute and appoint my sons Nathaniel and David Wright, executors of this my last will and testament, hereby investing them, or the survivor of them, or such one of them as may take upon himself the burthen of the execution of this my last will and testament, in case of the refusal of the other,with full power and authority to sell, either at public or private sale, as to them may seem most advantageous, all my real estate, in case it should be so determined by the election of my children,as aforesaid; to make deeds, *30 &c. That the will was proved by complainant, on the twenty-third of February, eighteen hundred and twenty-six, and that David Wright, the other executor named, at that time refused to act or prove the will. That complainant acted as sole executor, letting out the property, &c., until February, eighteen hundred and thirty-three, when Reuben, the youngest child, came of age; when he called a meeting of the children to ascertain their wishes as to the disposition of the real estate, wb ich •consisted of a farm of about two hundred and fifty-six acres.
All the children attended except Margaret, who authorized James Cooley to appear and say for her, and except Catharine and her husband, David Conover. They unanimously agreed that it was better to sell the farm.
Accordingly, in October, eighteen hundred and thirty-three, the complainant, as acting executor, advertised the farm in hand-bills and public paper for sale, with a memorandum at the bottom of the advertisement in these words: “ N. B. If the above property is not sold by the tenth day of December next, it will, on that day, be offered at public sale.”
That these bills were put up generally, and, as he believes, known to all the children who lived in the neighborhood, and he heard no objection. That James Cooley, the husband of Mary, since that time sold his right, (one twentieth,) to Elijah Wright, for three hundred dollars; and that Margaret, John Mettler husband of Hannah, and Nathan Dawes husband of Nancy, offered and were willing to sell their several shares at the same rate, which would put the farm at the value of six thousand dollars. That the widow still lives and has her dower. That a few days before the tenth of December,eighteen hundred and thirty-three, when the farm was to be sold at public sale,he entered into a written agreement to sell it to Peter Alpaugh,for seven thousand dollars, which was the best price he could get, and that Alpaugh was able to pay,&c.; and on the thirty-first of December, eighteen hundred and thirty-three, he conveyed the farm to him, and received his two equal bonds,with personal security,the one payable April first, eighteen hundred and thirty- *31 four, the oilier, April first, eighteen hundred and thirty-five, both without interest, and agreed to put him in possession on the first of April, eighteen hundred and thirty-four. The deed was delivered and recorded. That on the seventeenth of January eighteen hundred and thirty-four, David Wright, the other per son named as executor, proved the will, but gave no notice ol his intention, or that he had proved it.
That Elijah and complainant are in possession of the farm and notwithstanding the sale, the other children, since Eeuber came of age, claim the right to the farm, &c., and refuse to per mit the sale to go into effect, and keep Alpaugli out of possession, and refuse to confirm the sale, and deny the right of com plainant to make the sale.
That the children, or some of them, in May, eighteen hundred and thirty-four, applied for commissioners to divide the farm, and the court appointed them, and they were proceeding to divide, «fee., notwithstanding noticed by the complainants of the sale, •&c. By these means the complainant is hindered in executing his duty as executor, in perfecting sale to Alpaugh, &c., who is ready to pay the seven thousand dollars, according to agreement. 'That the sum of seven thousand dollars is a full consideration for the farm, and that the price has depreciated since the sale.
Upon these facts the complainant prays that the sale to Alpaugh maybe carried into effect, and the possession of the farm yielded up to him. That the proceedings of the children, at law, for division or re-sale, and the proceedings of the commissioners, may be restrained, &c., and for general relief.
Upon filing this bill, an injunction was issued according to its prayer.
To this bill an answer was filed by the defendants, Benjamin, David, Elijah, John A., Francis Q., JohnMettler, and William E. Seigle and Eachel his wife; in which they admit that they had a meeting for the purpose of deciding upon the manner of •disposing of the farm, as set forth by the complainant, and that they agreed that it should be sold; but they deny that they or either of them agreed that it should be sold at private sale, and *32 state, that it was upon that occasion unanimously agreed, as well by complainant as the others, that if they agreed to sell, it should be a public sale, to the highest bidder, unless they agreed to sell to one of the heirs, and that they would not have agreed to any sale except public. They admit that it was advertised as stated in the bill.
But Francis Q. Wright, in answering for himself, says, “that when he saw the advertisements, he objected to them to the complainant, because they were in violation of the agreement, &e. That complainant told him that he advertised in that form in order to make some arrangement on a river lot, which he held for a term of years yet to come from the testator; but he, the complainant, did not pretend to have a right to sell at private sale, &c.
And Elijah Wright, in answering for himself, says, “that, four or five days before the sale to Alpaugh, he called upon the complainant, and had a conversation upon the subject, when the complainant assured him that he would not sell the place at private sale, but would sell at public sale, according to the agreement.”
And John A. Wright, in answering for himself, says, “ that he resided in Warren county, and after the farm had been advertised, he heard that complainant intended to sell it at private sale and some time before the day fixed for the public sale, he went down to see the complainant upon the subject, when the complainant assured him that the property should be sold at public sale upon the day mentioned in the notice.”
And Francis Q. Wright says that he was present at the same time, and heard the complainant make the assurance.
The defendants further admit, that the complainant made the sale to Alpaugh, as set fokth, but deny that they or either of them had any notice of it until after it was closed.
David Wright, for himself, admits that he proved the will as stated in the bill, but denies that he ever refused to take upon himself the execution; that he only omitted and neglected so to do. That he proved the will by request of defendants, to prevent *33 the execution of sale to Alpaugh, which was made in violation of the agreement, &c.
They deny that th© property has depreciated in price, but allege that it was sold much too low, and since, it has advanced in price, &c. That on the third of May, eighteen hundred and thirty-four, a majority of defendants, to wit, Benjamin, John Mettler and wife, Nathan Dawes and wife, Francis Q. Wright, Elijah, David Conover and wife, John A. Wright, Eeuben Wright, and William E. Seigle and wife, by writing under seal, did determine to have the farm divided, &c., and commissioners were appointed; and the defendants pray that the injunction may be dissolved.
In examining this case, I have not found it necessary to consider whether the neglect of David Wright to prove the will of ills father, under the circumstances, amounted to a renunciation nor whether the complainant, according to the allegations of his own bill, has not an adequate remedy at law, nor whether Alpaugh has acquired any rights by his purchase which would be protected by this court. He is no party to the bill, and cannot be bound by any decree that may be made.
According to the true construction of the will of Benjamin Wright, deceased, it is evident that he intended that his executors, or such one as took upon himself the execution of the will, should have authority to sell either at public or private sale, provided it was determined to sell the property; but it is equally evident, that the devisees, or a majority of them, had the right to determine whether the property should be sold at all, or divided. And before determining that point, they had a right to call upon the executor to determine as to the course he would pursue in case they concluded to sell. And the executor had a full right at that time to determine whether he would sell at public or private sale; and if he did then determine,and the other devisees were influenced by that determination, in making their election to have the property sold, the executor could not alter that determination, without giving the heirs an opportunity of altering their determination upon the question whether it should be sold or divided. *34 It, therefore, becomes necessary to inquire whether in point of fact the complainant did determine the manner in which he would sell before the devisees elected to have it sold; and if so, whether it had any influence in their electing to have it sold.
Before examining the evidence upon this subject, I advert to some facts in the case, which are not controverted, and which have had an influence upon my mind. It appears by the testimony, that the executor-(complainant) sold the farm to Alpaugh on the sixth of December, eighteen hundred and thirty-three, which was but four days before the day fixed by the advertisement for the public sale. And there is no evidence or allegation that any of the defendants had any notice of the sale, until after the agreement for that purpose was executed. Even Elizabeth Alpaugh, the complainant’s witness, who lived with him during all this time, and is the niece of the complainant, and of Alpaugh, in her testimony says, “ She did not know that her uncle Peter was going to buy this property, before he had bought it. Never heard any conversation at her uncle’s about his buyingit, before he did buy it. She first heard that her uncle Alpaugh had bought the property, at her uncle Nathaniel’s, the next day after it had been sold,” &e. By this testimony, connected with the other facts of the case, it would appear that the sale was not only private, but secret.
A proper regard for the rights and interests of his co-devisees, and a just sense of his duty as trustee, would have dictated to him the propriety of giving them notice that he had received this offer, and of his intention to sell, even if there had been no question as to his authority to sell at private sale.
But I observe further, that by the terms of this agreement, which is dated the sixth of December, eighteen hundred and thirty-three, it is provided that the said Peter Alpaugh, was to pay one half of the consideration on the first of April then next, when he was to receive the deed, and take possession of the premises, and the balance on the first of April, eighteen hundred and thirty-five, and in the mean time, to secure the payment of *35 that balance by bond and mortgage on the place, or by other satisfactory security.
Yet, soon after ascertaining that the other parties in interest were about to resist the sale, he executed and delivered a deed for the property, without waiting for the time specified in the agreement for that purpose, and without receiving any part of the consideration, or delivering the possession of the premises to the purchaser. It is true, that the complainant, in his answer to the interrogatory of the defendants upon that subject, says, that he took advice of counsel, “to know in what way he could proceed so as to be able to fulfil his contract and avoid being brought into difficulty,” &c. Thus it appears that his only object was to fulfil the contract without getting into difficulty. Possibly, if he had asked advice as to the propriety of executing the contract, undei the circumstances, he might have been differently advised: atoll «vents, the fact shows that he gave the deed, under full knowl edge of the objections. But as to the question of fact, whether the complainant did determine to sell at public auction before the devisees elected to have it sold, an inspection of the evidence, to my mind, removes all reasonable doubts. In confirmation of the answer of the defendants upon this point, Nathan Dawes and Reuben 'Wright both testify, that they were present at the meeting called to decide whether the farm should be sold or divided, and upon that occasion, before electing whether to divide or sell, it was expressly agreed by all the heirs present, including the complainant, that if they elected to have it sold, it should be sold at public auction, and that the election to sell, was made under that agreement. John R. James, jr., testifies, that in a conversation between the complainant and Elijah, about the value of the farm, some time before the sale, complainant said he would sell it in two or three parcels, and ho understood that he would sell it at public sale. And James Cooley, the witness of complainant, although he says that at the meeting he thinks that the talk about selling at public or private sale was not until after they had agreed to sell, and when they broke up he did not think they had come to any conclusion how it should be sold, yet, upon his cross-ex- *36 animation lie says, “that after the heirs had agreed to sell, it appeared to witness that the major part of them wished a public sale. Did not hear any one of them object to a public sale. It was the impression of witness, that at that time the heirs unanimously made choice of a public sale.” The weight of this evidence cannot be shaken in the least, by the negative testimony of Elizabeth Alpaugh, who was in an adjoining room during this meeting, with the door open between them, and swears that she was attending to and heard what was passing, but did not hear any thing said about a public or private-sale.
As this cause was submitted without argument, I do not know the ground upon which the complainant principally relies to support his case; but from the course of the examination of the witnesses, some reliance appears to have been placed upon the fact that the advertisement contemplated a private or public sale, at the election of the complainant. There might have been some force in an argument deduced from the fact, if it had passed without remark; but it appears by the testimony of several witnesses, that this form of advertisement was objected to by some of the other heirs, as being contrary to the argeement to sell at public auction; and that the complainant explained it by stating that he wished to try which way it would do best, which was sufficient to quiet their fears that he might sell it at private sale without their knowledge.
There is some evidence, also, to show that the farm was sold for its full value, but upon this point there is evidence on both sides, and it is too vague and uncertain to establish a sale upon that ground, in opposition to the wishes of those owning four fifth parts of the property, and in violation of the agreement. If the complainant has any rights in this matter, he must seek them in the courts of law, for I find no facts in his case that entitle him to the aid of a court of equity.
Let the bill be dismissed with costs.